**SO ORDERED: May 01, 2008.**



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WASP PRECISION MACHINE, INC., | ) | Case No. 06-03842-JKC-7A |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JENICE GOLSON DUNLAP, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 07-50506 |
| | ) | |
| K. L. PROPERTIES, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court on Jenice Golson Dunlap's, as the Chapter 7 Trustee (the

"Trustee), Complaint against Defendant K. L. Properties, LLC ("K. L.") pursuant to 11 U.S.C. §

547(b).  Following a trial on March 27, 2008, the Court took the matter under advisement and now

issues the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1.  On or about July 20, 2004, Debtor, as buyer, and Westfield Manufacturing Corporation ("Westfield") and Jack H. Pickett, as sellers, entered into a Purchase and Sales Agreement (the "Purchase Agreement"), whereby Wasp Precision Machine, Inc. ("Debtor") agreed to purchase essentially all of the sellers' business assets, including inventory, accounts receivable and equipment (the "Assets")  The total purchase price under the Purchase Agreement was $450,000.00, which Debtor was to pay in monthly installments of $6,000.00, with a final balloon payment due on July 15, 2006.[1]

2.  On or about September 24, 2004, Debtor entered into a commercial lease agreement with K. L under its assumed name, Westfield Manufacturing (the "Lease").

3.  On or about September 15, 2005, Debtor defaulted under the Purchase Agreement by failing to pay its monthly installment.  No other payments have been made to the sellers since that date.

4.  On or about October 1, 2005, Debtor defaulted under the Lease.  About that same time, Debtor vacated the premises, leaving all of its machinery and equipment.

5.  Westfield and Pickett eventually brought an action in state court against Debtor and

---

[1]  Debtor was given immediate possession of the Assets under the Purchase Agreement.  The Purchase Agreement provided, however, that Debtor was to "prepare appropriate forms of instruments of transfer and conveyance . . . and submit them to the sellers for examination."  Thereafter, Debtor and the sellers were to "deliver the fully executed bill of sale and other instruments of transfer" to an escrow agent identified in the Purchase Agreement.  Upon payment of the purchase price, they were to then execute instructions to the escrow agent to release the documents to Debtor.

Contrary to these provisions, Debtor did not prepare the required documents.  Pursuant to Indiana's Commercial Code, it appears that title to the Assets passed to Debtor notwithstanding such nonperformance.  *See* IND. CODE § 26-1-2-401(1) ("Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.").  It bears noting that in defending this action, K. L. does not dispute that Debtor owned the Assets.

2

K. L., seeking to recover the machinery and equipment located on the leased premises. K. L., in turn, counterclaimed against Westfield for storage fees and cross-claimed against Debtor for breach of the Lease.

6.     On May 24, 2006, K. L. entered into an Agreed Entry with Westfield and Pickett whereby the parties agreed that the equipment and machinery located on K. L.'s property would be removed and sold at auction and that the proceeds would be paid to K. L. for "back rent."

7.     Sometime in June of 2006, i.e., within 90 day of Debtor's bankruptcy filing, the equipment and machinery were sold at auction.  For an unexplained reason, the sale proceeds were apparently deposited in Westfield's account at Community Bank.  Thereafter, Westfield issued a check for $19,500.00 to K. L. that was deposited into K. L's account with Irwin Union Bank on or about June 18, 2006 (the "Transfer").

8.     On July 14, 2006, Debtor filed a Chapter 7 bankruptcy petition.

9.     On August 29, 2007, the Trustee timely initiated this adversary proceeding against K. L. to avoid the Transfer under 11 U.S.C. § 547(b).

## Conclusions of Law

1.     The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Under Section 547(b), a trustee may avoid a transfer of an interest of the debtor in property made:  (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) on or within 90 days before the date of the filing of the petition; and (5) that enables the creditor to receive more than it would have otherwise received in a Chapter 7 liquidation.

3

3.      The trustee must prove all of the elements set forth above by a preponderance of the evidence.  *See In re Prescott*, 85 F.2d 719, 726 (7th Cir. 1986); 11 U.S.C. § 547(g).  However, the debtor is presumed to be insolvent on or during the 90 days immediately preceding the date of the filing of the petition.  11 U.S.C. § 547(f).

4.      At the outset of the trial in this proceeding, the parties stipulated that the only issue requiring adjudication was whether the Trustee's avoidance action is defeated by the fact that K. L. received the Transfer from Westfield rather than directly from Debtor.  The parties otherwise agree that all of the elements of § 547(b) have been satisfied.

5.      Section 101(54)(D) defines "transfer" in relevant part as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or an interest in property."  It is not clear from the evidence why the auction proceeds were deposited in Westfield's bank account.  The evidence before the Court indicates, however, that the funds paid to K. L. were from the sale of property belonging to Debtor and that the funds were intended to pay back rent owed by Debtor to K. L.  The fact that the funds were apparently funneled through Westfield Corporation is irrelevant for purposes of § 547(b).[2]

6.      K. L. has not raised any other defense under § 547(c) to the Trustee's action.  Therefore, based on the undisputed facts, the Court concludes that the Trustee has satisfied the elements of § 547(b).  The Transfer is hereby avoided.

7.      The Court will issue a separate Judgment Order consistent with these Findings of Fact and Conclusions of Law.

---

[2]  If the path the Transfer took from Debtor to Westfield Corporation to K. L. has any relevance it is under § 550 of the Code, which governs the liability of a transferee for an avoided transfer.  In its Complaint, the Trustee did not assert a claim for recovery under § 550, and it must, therefore, be brought by separate action.

4

###

Distribution:

Paul D. Gresk
Robert C. Becker
UST